Meghan S. Maertz
CA Bar # 276976
185 South Linden Drive
Ventura, California 93004
Telephone: 805-444-6801
Email: meghansherry@yahoo.com

*Attorney for Plaintiff*

[Additional Counsel on Signature Page]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

BRETT BOYER, individually and on behalf of all others similarly situated,

Plaintiff(s),

v.

OUTERWALL INC.,

Defendant(s).

Case No. '16CV2745 LAB BLM

Complaint – Class Action

Jury Demanded

# CLASS ACTION COMPLAINT

[1]Plaintiff Brett Boyer ("Plaintiff" or "Boyer"), on behalf of himself and all others similarly situated, alleges as follows:

## INTRODUCTION

1. In enacting the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Congress provided a clear mandate regarding the elimination of discrimination against individuals with disabilities. Such discrimination that Congress sought to eliminate includes: (i) barriers to full integration; (ii) barriers to independent living; and (iii) barriers to equal opportunity for persons with disabilities, including places of public accommodations that are inaccessible to blind and visually-impaired persons (collectively, "visually-impaired individuals").[2]

2. This action involves Defendant Outerwall Inc.'s Coinstar automated coin-counting kiosk system, which is utilized by the general public to "convert their coins to cash or stored value products." *See* Outerwall Inc. Quarterly Report filed with the Securities and Exchange Commission for quarterly period ending September 30, 2015, filed on or about October 29, 2015 ("3Q 2015").

3. Coinstar kiosks are self-service, automated machines that permit individuals to use a touch-screen interface to exchange their coins, without the assistance of a store clerk or any other third party.

4. As explained in detail below, Defendant's kiosks fall within the

---

[1] Plaintiff filed a complaint against Defendant on February 8, 2016, which alleged violations of the ADA identical to those alleged in this complaint. The February 8, 2016 complaint was dismissed without prejudice on October 24, 2016 for failure to serve and failure to prosecute.

[2] Plaintiff uses the term "visually-impaired individuals" to refer to all persons with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some individuals who meet this definition have limited vision, while others have no vision.

purview of the ADA as they are deemed places of public accommodations.

5. Plaintiff is legally blind and is an "individual with a disability" as that term is understood pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and its implementing regulations.

6. Although classified as an "individual with a disability" under the ADA, Plaintiff leads an active social life and routinely travels for school, work, and social functions.

7. However, Plaintiff's active lifestyle is impeded by Defendant's failure to conform to the requirements of the ADA. As described more fully below, Defendant's Coinstar kiosks prevent visually-impaired individuals, such as Plaintiff, from independently using them.

8. As set forth in detail below, Defendant's Coinstar kiosks are inaccessible to visually impaired individuals. The kiosks make use of an exclusively visual interface that requires users to identify and interact with command icons on the screen, without any adaptive features to accommodate visually-impaired individuals. As a result, all of the services and features provided at Defendant's kiosks are only available to sighted customers.

9. Unless Defendant corrects the access barriers detailed herein, Plaintiff will be effectively denied full and equal access to Defendant's accommodations.

10. The ADA permits private individuals, such as Plaintiff, to bring suit in federal court so as to compel compliance with the ADA.

11. Accordingly, through this class action, Plaintiff seeks to end the systematic violation of the ADA – and thus the ongoing civil rights violations – of a class of similarly situated individuals by Defendant. In particular, Plaintiff seeks: (i) a declaration that Defendant's kiosks violate federal law as described; and (ii) an injunction requiring Defendant to remove the identified access barriers so that they are fully accessible to, and independently usable by, visually-impaired individuals

such as Plaintiff and the class he seeks to represent.

12. Plaintiff also requests that once Defendant is fully in compliance with the requirements of the ADA, the Court retain jurisdiction for a period of time to be determined to ensure that Defendant has adopted and is following an institutional policy that will, in fact, cause Defendant to remain in compliance with the law.

## JURISDICTION AND VENUE

13. This Court has federal question jurisdiction over the ADA claims asserted herein pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

14. Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

15. This Court has supplement jurisdiction pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the California Unruh Civil Rights Act (the "Unruh Act"), Cal. Civ. Code, §51 et seq., and the California Disabled Persons Act (the "CDPA"), Cal. Civ. Code, §54 et seq.

16. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## PARTIES

17. Plaintiff is and, at all times relevant hereto, was a resident of the State of California. Plaintiff is and, at all times relevant hereto, has been a legally blind individual, and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

18. Defendant Outerwall, Inc., ("Defendant" or "Outerwall") is incorporated in the state of Delaware with headquarters in Bellevue, Washington. Defendant's Coinstar segment owns and operates well over 15,000 coin-counting kiosks, which enable consumers to convert their coins to cash or eGift Cards, or to

donate their coins to a charitable cause.

19. Defendant reported gross revenues of $318,611,000 by its Coinstar segment in 2015.

## TITLE III OF THE ADA

20. On July 26, 1990, President George H.W. Bush signed into law the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.

21. The ADA broadly protects the rights of individuals with disabilities with respect to employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

22. Title III of the ADA prohibits discrimination in the activities of places of public accommodation and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181-89.

23. The ADA applies to all places of "public accommodation." Effectively, a public accommodation is any private entity that owns, operates, leases, or leases to a place of public accommodation. Based on the broad definition, restaurants, hotels, theaters, doctors' offices, dentists' offices, hospitals, retail stores, health clubs, museums, libraries, private schools, and day care centers are all considered places of public accommodation under the ADA.

24. Section 302(a) of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq., provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

25. Under Section 302(b)(l) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.

26. Under Section 302(b)(l) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation, which is equal to the opportunities afforded to other individuals.

27. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;

28. Importantly, places of public accommodation newly built or altered after January 26, 1993 must be readily accessible and usable by disabled individuals.

29. As set forth below, Defendant has failed to comply with the aforementioned requirements of the ADA.

## FACTUAL ALLEGATIONS

30. Defendant owns, operates, and/or leases a place of public accommodation.

31. Defendant's facilities are not fully accessible to, and independently usable by, individuals with disabilities.

32. Modern technology has provided a wave of automated and self-service shopping services. As such, self-service kiosks are becoming an increasingly common, and thus necessary, way people shop and access other services.

33. One such type of self-service kiosk is Defendant's "Coinstar" branded kiosks which allow individuals to exchange loose coins for cash or stored value products.

34. Defendant maintains Coinstar kiosks in well over 15,000 locations across the United States. Its kiosks are located primarily in supermarkets, drug stores, convenience stores, malls, restaurants, and financial institutions across the United States.

35. For example, Defendant maintains Coinstar kiosks at CVS Pharmacies, Wal-mart Stores, Inc., and Albertsons.

36. Upon information and belief, Defendant maintains over one thousand Coinstar kiosks within the State of California.

37. Upon information and belief, Defendant uses a uniform design for its Coinstar kiosks in the United States. As part of this uniform design, Coinstar kiosks use a visual, touch-screen interface that offers customers the same form of services irrespective of the actual kiosk used.

38. The touch-screen interface allows sighted customers to access a variety of accommodations, advantages, facilities, privileges, and services, including the

ability to independently select the product they wish to receive in exchange for their coins.

39. Exclusively via the touch-screen interface, and prior to inserting their coins into the Coinstar kiosk, sighted customers opt to either receive cash (minus a service fee of more than 10% of the value of the coins inserted), an eGift Card from a selected group of merchants, or to donate their coins to one of several charities offered at each kiosk.

40. Through the use of the visual, touch-screen interface, a sighted person can make their selection without the assistance of third parties and, as such, does not have to disclose any information, such as the amount of coins deposited or the cash value thereof, to said third-parties.

41. After making their selection, Defendant's customers must add their coins to a tray on the kiosk, lift the corresponding handle, and guide the coins into the slot.

42. Depending on the selection made, once the value of the coins has been calculated the kiosk produces one of the following: a printed cash voucher that must be redeemed for cash at the customer service area or checkout area of the merchant in which the kiosk is located; a printed voucher with a unique eGift Card code; or, a receipt detailing the value of the charitable donation.

43. The touch-interface also allows sighted customers the ability to see the calculated amount of the coins they have inserted into the Coinstar kiosk and the corresponding value of their voucher, eGift Card or charitable donation.

44. In contrast, visually-impaired individuals must seek the assistance of companions, strangers, or other third parties in order to use Coinstar kiosks in any of the foregoing ways. Such assistance requires, among other things, disclosure to other individuals of the amount of coins deposited and the value of the cash or eGift Cards received, or the charitable contribution made.

45. Accordingly, because of the touch-screen interfaced utilized by Defendant's kiosks, all Coinstar kiosks are effectively not independently accessible to visually-impaired individuals.

46. According to the National Federation of the Blind, California has the largest population of visually impaired people in the United States. *See* https://nfb.org/blindness-statistics (last visited November 4, 2016). As of 2013, there were approximately 790,700 blind/visually-impaired people in California.

47. Plaintiff seeks full and equal access to the accommodations, advantages, facilities, privileges, and services provided by Defendant at all its Coinstar kiosks located in the State of California.

48. Based on the sheer volume of kiosks Defendant has in California, Defendant's kiosks provide an array of coin-changing services to hundreds (if not thousands) of customers on a daily basis.

49. Many visually-impaired individuals, including Plaintiff, wish to exchange their coins for cash or eGift Cards, or to donate their coins to a charitable cause.

50. Indeed, Plaintiff makes use of Defendant's Coinstar kiosks for coin-changing purposes.

51. The lack of accessible Coinstar kiosks means that visually-impaired individuals, including Plaintiff, are excluded from independently accessing this service. Consequently, visually-impaired individuals must rely on sighted companions or strangers to assist them in exchanging coins at Defendant's Coinstar kiosks.

52. In order to use Defendant's kiosk, Plaintiff is required to seek the assistance of others as Defendant's kiosks are designed to be self-service machines and thus Defendant does not typically maintain employees at the machines.

53. On or around October 21, 2015, Plaintiff used the Coinstar kiosk

located at the Ralph's grocery store in San Marcos, California to exchange his loose change for cash.

54. Because the Coinstar kiosks are not independently accessible to visually-impaired individuals, Plaintiff was forced to rely on assistance from a third party.

55. Indeed, due to the nature of Defendant's Coinstar machines, Plaintiff was placed in the unenviable position of seeking assistance from a third party regarding his personal financial matters – how much money he was carrying and whether he intended to keep said funds on his person or donate the money charity.

56. Although he has encountered Coinstar machines at other locations, Plaintiff typically uses the Coinstasr kiosk located at the Ralph's grocery store in San Marcos as this location is frequently visited by Plaintiff in the course of his daily activities.

57. Typically, Plaintiff has used Defendant's Coinstar kiosks at least once or twice a year, as it allows him to exchange his loose coins for cash.

58. Plaintiff will continue to attempt to use Defendant's accommodations as he wishes to exchange his coin money for cash or eGift Cards, or to make charitable donations. However, so long as Defendant's kiosks continue to violate the ADA, Plaintiff will be unable to use them independently and will be, thereby, denied full access to Defendant's accommodations.

59. The inaccessible nature of Defendant's kiosks exists despite the fact there is readily available accessible technology. This technology has long been used by financial institutions that make use of audio features, tactile controls, and screen reading software which permits visually-impaired individuals to use their ATMs independently.[3]

---

[3] The ADA and its implementing regulations required ATMs to be fully accessible by March 2012.

60. Despite this readily available technology, Defendant has chosen to rely on an exclusively visual interface – rendering the kiosks only independently accessible to sighted customers who can browse and select products, and exchange their coins without the assistance of others.

61. Defendant is aware that its Coinstar kiosks do not comply with the ADA. Indeed, Defendant's subsidiary, Redbox Automated Retail, LLC, recently settled a class action lawsuit filed by and on behalf of blind and visually impaired consumers in California which alleged that Redbox's kiosks -- which utilize similar touch-screen technology as Coinstar kiosks – violated the ADA and California state law.

62. Defendant thus provides accommodations, advantages, facilities, privileges, and services to customers that contain access barriers. These barriers deny full and equal access to Plaintiff and other visually-impaired individuals in California who would otherwise use Defendant's Coinstar kiosks independently.

63. By failing to make its Coinstar kiosks accessible to visually-impaired individuals, Defendant is violating basic equal access requirements under applicable federal law.

64. Plaintiff uses Defendants' public accommodations and will likely continue to do so in the future.

65. Plaintiff requests periodic monitoring to confirm that the public accommodations are brought into compliance and remain in compliance.

66. Without injunctive relief, Plaintiff will continue to be unable to independently use Defendant's accommodations.

## **CLASS ACTION ALLEGATIONS**

67. Plaintiff brings this action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the following class: "all legally blind individuals who have been and/or are being denied access to Coinstar kiosks within

the state of California" (the "Class").

68. Upon information and belief, the Class is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective Class members through this class action will benefit both the parties and this Court.

69. Typicality: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same unlawful conduct.

70. Common Questions of Fact and Law: There is a well-defined community of interest and common questions of fact and law affecting members of the Class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's accommodations and/or services due to Defendant's failure to make its accommodations fully accessible and independently usable as above described.

71. The questions of fact and law common to the class include but are not limited to the following:

a. Whether Defendant is a "public accommodation" under the ADA;

b. Whether Defendant's conduct in failing to make its accommodations fully accessible and independently usable as described above violated the ADA; and

c. Whether Plaintiff and members of the class are entitled to declaratory and injunctive relief.

72. Adequacy of Representation: Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and have no interests antagonistic to the

members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, including litigation involving claims of violations of the ADA.

73. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

**COUNT I**

**VIOLATION OF THE ADA**

74. The allegations contained in the previous paragraphs are incorporated by reference.

75. Defendant's kiosks are places of public accommodation within the definition of Title III of the ADA. 42 U.S.C. §§12181(7)(E).

76. Defendant has discriminated against Plaintiff and the Class in that it has failed to make its kiosks fully accessible to, and independently usable by, individuals with disabilities in violation of the ADA, as described above.

77. Defendant's acts described above constitute a violation of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq., and the regulations promulgated thereunder.

78. Complying with the ADA would neither fundamentally alter the nature of Defendant's business or its kiosks, nor result in an undue burden to Defendant.

79. Defendant's conduct is ongoing, and, given that Defendant has not complied with the ADA's requirements that public accommodations make themselves fully accessible to, and independently usable by, individuals with disabilities – as specified by the ADA, Plaintiff invokes his statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees.

80. Without the requested injunctive relief, specifically including the

request that the Court retain jurisdiction of this matter for a period to be determined after the Defendant certifies that it is fully in compliance with the mandatory requirements of the ADA that are discussed above, Defendant's non-compliance with the ADA's requirement that its kiosks be fully accessible to, and independently usable, by individuals with disabilities is likely to recur.

**COUNT II**

**VIOLATION OF THE UNRUH CIVIL RIGHTS ACT**

81. The allegations contained in the previous paragraphs are incorporated by reference.

82. The Unruh Act guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code, §51(b).

83. The Unruh Act also provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, §51(f).

84. Defendant has violated the Unruh Act by, inter alia, denying, or aiding or inciting denial of, Plaintiff's and the class members' rights to the full and equal accommodations, advantages, facilities, privileges, or services offered by Coinstar kiosks.

85. Defendant has also violated the Unruh Act by denying, or aiding or inciting the denial of, Plaintiff's and class members' rights to equal access arising from the provisions of the California state accessibility regulations and the ADA.

86. Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code §52, Plaintiff prays for judgment as set forth below.

**COUNT III**

**VIOLATION OF THE CALIFORNIA DISABLED PERSONS ACT**

87. The allegations contained in the previous paragraphs are incorporated

by reference.

88. Defendant's Coinstar kiosks are places of public accommodation and/or places to which the general public is invited and, as such, are obligated to comply with the provisions of the CDPA.

89. The CDPA guarantees, inter alia, that persons with disabilities are entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, and privileges of covered entities. Cal. Civ. Code §54.1(a)(1).

90. The CDPA also provides that a violation of the ADA, or of California state accessibility regulations, is a violation of the CDPA. Cal. Civ. Code §54.1(d).

91. Defendant has violated the CDPA by, inter alia, denying and/or interfering with Plaintiff's and class members' right to full and equal access as other members of the general public to the accommodations, advantages, or facilities of Coinstar kiosks in California.

92. Defendant has also violated the CDPA by denying and/or interfering with the Plaintiff's and class members' rights to equal access arising from the provisions of the California state accessibility regulations and the ADA.

93. Pursuant to the remedies, procedures, and rights set forth in California law, including Cal. Civ. Code §§54.3 and 55, Plaintiff prays for judgment as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, pray for:

A. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, the Unruh Act, and the CDPA;

B. A permanent injunction which directs Defendant to take all steps

necessary to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that all of its facilities are fully in compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain in compliance with the law;

C. An Order certifying the Class proposed by Plaintiff, and naming Plaintiff as the class representative and appointing his counsel as class counsel;

D. An award of minimum statutory damages under Unruh and the CDPA to Plaintiff and members of the proposed class;

E. Payment of costs of suit;

F. Payment of reasonable attorneys' fees; and

G. The provision of whatever other relief the Court deems just, equitable and appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury as to all issues so triable.

Date: November 5, 2016____

Respectfully submitted,

By: Meghan S Maertz

Meghan S. Maertz
CA Bar # 276976
185 South Linden Drive
Ventura, California 93004
Telephone: 805-444-6801
Email: meghansherry@yahoo.com

Gerald D. Wells, III
Stephen E. Connolly
**CONNOLLY WELLS & GRAY, LLP**
2200 Renaissance Blvd., Suite 308
King of Prussia, PA 19406
Telephone: (610) 822-3700
Facsimile: (610) 822-3800
Email: gwells@cwg-law.com

Arkady "Eric" Rayz
Demetri A. Braynin
**KALIKHMAN & RAYZ, LLC**
1051 County Line Road, Suite "A"
Huntingdon Valley, PA 19006
Telephone: (215) 364-5030
Facsimile: (215) 364-5029
E-mail: erayz@kalraylaw.com
E-mail: dbraynin@kalraylaw.com

Counsel for Plaintiff and the Proposed Class